IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-304-BO-BM

| | |
|---|---|
| JANET O'CALLAGHAN, MEGAN SLAGLE, SUMMER SELLERS, REBECCA HUSAIN, BARBARA KAMINSKI, MARY DAILEY, ANDREW SMITH, TANYA SPURGEON, JILL ROBERTS, AND JENNIFER CIPOLLINO, *Individually, and on behalf of the classes and all others similarly situated,*<br>Plaintiffs,<br><br>v.<br><br>SYNEOS HEALTH, INC.,<br>Defendant. | O R D E R |

This matter is before the Court on Defendant Syneos Health Inc.'s Motion to Compel Arbitration, Motion to Partially Dismiss Plaintiffs' Claims, and Motion to Strike Plaintiffs' Class Claims from the First Amended Complaint. [DE 40] The plaintiffs have responded, and the defendant has replied. In this posture, the motion is ripe for ruling. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

Defendant Syneos Health, Inc. is a biopharmaceutical solutions company headquartered in Morrisville, North Carolina. Beginning in September 2021, Syneos adopted a vaccine policy requiring certain U.S. based employees to be vaccinated against COVID-19 unless they were granted a religious or disability-based accommodation. Syneos provided instructions on how to apply for an accommodation, which all of the plaintiffs in this suit did.

Plaintiffs Slagle, Sellers, Husain, and Dailey requested that they be exempted from the vaccine policy due to their disabilities. Plaintiffs O'Callaghan, Slagle, Kaminski, Dailey, Smith, Spurgeon, Roberts, and Cipollino requested that they be exempted from the vaccine policy due to their sincere religious beliefs. Syneos granted all of these exemption requests on a temporary basis.

In December 2021, Syneos determined that continuing to allow these accommodations would impose an undue hardship on the company, and sent a form email to the plaintiffs informing them that they must receive the COVID vaccine or face termination. The plaintiffs refused to be immunized, and their employment was terminated on January 31, 2022. Plaintiffs then filed the present suit alleging disability and religious discrimination on behalf of a class of like-situated employees. Syneos has moved to partially dismiss the claims.

## DISCUSSION

### I. Partial Motion to Dismiss

Defendant Syneos moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). A motion for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard does not require detailed factual allegations, *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 212 (4th Cir. 2019), but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Although the court accepts the factual allegations as true, the court does not accept the complaint's legal conclusions, so "simply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard." *ACA Financial Guaranty Corporation*, 917 F.3d at 212.

"In the context of a Title VII case, 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' to survive a motion to dismiss." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)). Rather, a Title VII plaintiff is required to plausibly allege facts that satisfy the elements of a cause of action created by that statute. *Id.* Title VII therefore "requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *England v. Ahoskie Housing Authority*, 2021 WL 865123 (E.D.N.C. 2021) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015.))

### A. Plaintiff Dailey's ADA Claims

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees…" 42 U.S.C. § 12112(a). In the context of an ADA case, a prima facie case is established if the plaintiff alleges that "(1) he is a disabled person within the meaning of the statute; (2) he is a qualified individual with a disability; and (3) he suffered an

3
Case 5:23-cv-00304-BO-BM   Document 51   Filed 09/27/24   Page 3 of 13

adverse employment action because of his disability." *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001).

Plaintiff Dailey claims that Syneos violated the ADA by discriminating against her because of her pregnancy and failing to accommodate that disability. Syneos argues that Dailey has failed to state a claim under the ADA because she alleges only that she was disabled on account of her pregnancy. [DE 41 at 21] The Court agrees with Syneos.

While pregnancy itself is not considered a disability under the ADA, complications related to pregnancy may be. *See Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 430 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022); *Mayer v. Pro. Ambulance, LLC*, 211 F. Supp. 3d 408, 420 (D.R.I. 2016); *Moore v. CVS Rx Servs., Inc.*, 142 F. Supp. 3d 321, 344–45 (M.D. Pa. 2015), *aff'd*, 660 F. App'x 149 (3d Cir. 2016). A pregnancy-related complication can count as a disability if it either causes a "physical or mental impairment that substantially limits one or more major life activities" or causes the plaintiff to be "regarded as having such an impairment." 42 U.S.C. § 12102(1).

Dailey, however, does not allege that she suffered from pregnancy complications. Rather, she alleges only that she was pregnant and sought an accommodation to the vaccine policy on this basis. Amend. Comp. ¶¶ 108, 440. Based on pregnancy alone, Dailey is not a "qualified individual" within the meaning of the ADA. Her allegations are therefore insufficient to state a claim for relief under the ADA.

### B. Plaintiffs' "Regarded-As Disabled" (RAD) Claims

The plaintiffs have alleged that, even if the plaintiffs were not disabled, Syneos discriminated against them because it "regarded them as disabled." Syneos claims that the plaintiffs have failed to meet the pleading standard because the plaintiffs do not allege that

4

Syneos considered them to have any disability other than the disabilities disclosed by the plaintiffs in the process of requesting accommodations, which plaintiffs themselves concede may not qualify as disabilities under the ADA. [DE 41 at 23] Further, Syneos claims that the RAD claims fail because Syneos applied the vaccine policy evenhandedly to members of the RAD group and those employees outside of it.

An individual is 'regarded as disabled' if they have been subjected to an action prohibited under the ADA because of "an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12101(3)(A). It is of no moment whether the conditions that the plaintiffs disclosed to Syneos during the process of requesting accommodations actually qualified as disabilities under the ADA—what matters is whether Syneos took employment action based on its perception of the plaintiffs' disabilities. Plaintiffs point, compellingly, to the emails from Syneos temporarily granting their requests for accommodations in September 2021. Complaint, Ex. 4 and Ex. 5. Even if not actually disabled under the ADA, Syneos evidently found their requests for accommodations compelling enough to grant. It is hard to think of a clearer example of being "regarded as disabled."

Syneos further argues that plaintiffs allege no plausible causal link between being regarded as disabled and the manner of their termination because Syneos applied the vaccine policy uniformly to those within the RAD class and those outside of it. [DE 41 at 24] Plaintiff has, however, alleged that they were regarded as disabled, that they were terminated after they failed to comply with the vaccine policy, and that terminated employees who were not part of the RAD class were treated more favorably. Amend. Comp. ¶¶ 735-738. These factual allegations are significant enough for a jury to draw a reasonable causal chain between them. For these reasons, the defendant's motion to dismiss the Regarded-As-Disabled claims is denied.

### C. Plaintiff's Natural Immunity Claims

In addition to plaintiffs' claims of religious, disability, and RAD discrimination, the plaintiffs have brought separate claims for those same three types of discrimination specifically on behalf of the "naturally immune." Defendant Syneos has moved to dismiss these separate claims on the ground that "natural immunity" does not define a protected class. The Court agrees. [DE 41 at 25]

Race, color, sex, gender, national origin, age, religion, and disability are all classes protected under federal law, and discrimination based on such characteristics can be addressed by the courts. Discrimination against a group of individuals "naturally immune" to a specific disease is not recognized under federal law. This is reflected in plaintiffs' complaint, where they claim that the "naturally immune" are a subclass of the protected religious and disability classes.

The only significant allegation made in the "naturally immune" claims not also made in the regular discrimination claims is that Syneos insisted that their employees receive the COVID vaccine despite evidence that the vaccine was ineffective. However, arguments about the efficiency of immunization, the advisability of company policy, and the motivations for issuing such a policy are not relevant in determining whether unlawful discrimination has occurred. *See Troulliet v. Gray Media Grp, Inc.*, 2023 WL 2894707 at 5 (E.D. La. 2023). Plaintiffs' beliefs about natural immunity and the strength of their immune systems tend to reflect personal or medical beliefs, rather than religious ones. *Wilhoit et. al v. AstraZeneca Pharmaceuticals, LC*, 2024 WL 2843169 at 3 (D. Del. 2024). Objections to vaccination that are based on disputes about scientific evidence cannot survive a motion to dismiss simply by being couched in religious or disability-focused language. *See Winans v. Cox Auto., Inc.*, 669 F. Supp. 3d 394, 401 (E.D. Pa. 2023).

Plaintiffs further allege that taking unlawful discriminatory action against a person with natural immunity is more egregious because Syneos could have accepted natural immunity in lieu of vaccination and therefore provided reasonable accommodations without undue hardship. [DE 42 at 11] That is a line of argument that plaintiffs may pursue later in these proceedings separate and apart from whether the natural immunity claims can meet the pleading standards on their own. For the purposes of a motion to dismiss, the status of being "naturally immune" is insufficient to give rise to a separate claim of discrimination under Title VII or the ADA because it is not a protected class. For these reasons, the defendant's motion to dismiss the natural immunity claims is granted.

### D. Plaintiff's Disparate Impact Claims

A disparate impact claim requires an employment policy that is facially neutral in its treatment of different protected groups, but that in fact falls more harshly on one group than the other. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003). A plaintiff alleging disparate impact must show that the employment policy had a significant disparate impact on the protected class. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989).

Defendant Syneos moves to dismiss these claims, arguing that plaintiffs have failed to allege that the vaccination policy had a significant discriminatory effect on class members and that plaintiffs failed to include numerical or statistical evidence to support their allegations. [DE 41 at 30]

However, the plaintiffs have pointed to a discrete policy—Syneos's vaccination requirement—and alleged that it had a disparate impact on religious and disabled individuals as compared to other, non-religious and non-disabled individuals. To support this position, they argue that almost all of those whose religious beliefs or disabilities prevented vaccination were
7

terminated—far, far more than the employees whose beliefs and bodies did not prevent vaccination. [DE 42 at 15]

Defendant Syneos argues in response that the relevant comparison is between the employees whose beliefs or disabilities conflicted with the vaccination policy and all other employees with religious beliefs or disabilities. [DE 41 at 30] This argument misses the point of Title VII and the ADA—such laws are intended not just to protect those with religious beliefs or disabilities, but specifically to protect individuals whose beliefs or disabilities conflict with then-existing employer policies. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 (2015). Comparing the much greater impact of the vaccination policy on those whose beliefs or disabilities conflict with the policy versus the impact on all other employees, it is evident that the plaintiff has met the pleading burden for a discriminatory impact claim. Furthermore, as no discovery has taken place in this case, it is unrealistic to expect plaintiffs to be able to produce concrete statistical evidence of discrimination. For these reasons, the defendant's motion to dismiss the disparate impact claims is denied.

## II.  Motion to Strike Class Claims

Syneos has moved to strike Plaintiffs' class claims, arguing that it is clear from the face of the first amended complaint that Plaintiffs do not meet the requirements for class certification under Federal Rule of Civil Procedure 23. Plaintiffs have brought claims on behalf of three classes—the Religious Class, the Disability Class, and the RAD Class, each with a smaller Naturally Immune Subclass. The claims unique to the Natural Immunity Subclasses have already been addressed and dismissed, leaving only the larger Religious, Disability, and RAD Classes.

Federal Rule of Civil Procedure 23 governs class certification. "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) "Under Rule 23(a), the party seeking certification must demonstrate, first that '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Wal-Mart Stores, Inc.*, 564 U.S. at 346 (quoting Fed. R. Civ. P. 23(a)).

Syneos alleges that religious and disability discrimination suits are fact-intensive inquiries best suited for individual litigation, and inappropriate for resolution as a class action. To support this, they allege that plaintiffs' claims lack sufficient commonality and that individual factors would predominate over any class-wide issues. They further contend that no amount of discovery or further investigation could reveal such common questions. [DE 41 at 33]

The Court disagrees. No discovery has been conducted in this case, and no Motion for Class Certification has yet been presented by the plaintiffs. It is premature to analyze class allegations on their merits in a motion to strike, and the decision to certify a class is preferably decided after some discovery. *Zahran v. Bank of America, N.A.*, 2021 WL 2226491 (W.D.N.C. 2021) (citations omitted). Courts are justifiably wary of striking class claims before discovery has been conducted, doing so only when "[n]o amount of additional class discovery will alter th[e] conclusion that the class is not maintainable." *Id.* Plaintiffs have suggested several questions that may be appropriate for common resolution after additional discovery [DE 42 at 18], and additional discovery will better allow both the parties and the Court to assess the issues surrounding class certification. Granting the motion to strike would be inappropriate at this stage, and the motion is therefore denied.

### III. Motion to Compel Arbitration

Syneos also moves to enforce an arbitration agreement against Plaintiff Cipollino. Section 4 of the Federal Arbitration Act ("FAA") allows a party to an arbitration agreement to enforce that agreement by petitioning any district court for an order compelling arbitration. 9 U.S.C. § 4. Under § 4, arbitration will be compelled if (1) the parties have entered into a valid agreement to arbitrate, and (2) the dispute in question falls within the scope of the arbitration agreement. *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 563 (4th Cir. 2015); *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173 (4th Cir. 2013).

Of these elements, Cipollino disputes only the first, arguing that there is no valid agreement to arbitrate her claims against Syneos. Cipollino contends that no valid agreement exists for two reasons. First, she declares that she "do[e]s not recall ever signing an arbitration agreement with Syneos. Cipollino Dec. ¶ 7 [DE 42-1]. Second, she argues that even if she did sign an arbitration agreement, it is not valid because it was superseded by a merger clause in a later offer letter. According to Cipollino, she signed her initial offer letter and completed the onboarding process only to learn that the offer letter mistakenly included health care benefits. Syneos sent an updated offer letter without those benefits on the afternoon of 17 August 2021. Later that day, Cipollino signed the second offer letter. Cipollino unequivocally denies signing any arbitration agreement after signing the updated offer letter. ¶ 13.

Syneos introduced evidence that it requires new employees, including Cipollino, to complete an onboarding process through an online platform. As part of that onboarding process, Cipollino was required to review and accept Syneos's Mutual Arbitration Agreement. In fact, agreeing to the Mutual Arbitration Agreement was an express condition of her employment with Syneos. Trucks Decl. ¶¶ 16. Syneos has produced a Mutual Arbitration Agreement signed by

Cipollino the morning of May 17, 2021. Trucks. Decl., Ex. A. Additionally, Syneos has produced a record of the task history created by the online onboarding program, corroborating that Cipollino completed the arbitration agreement the morning of May 17, 2021. Trucks. Decl., Ex. B.

This boils down to a dispute over which agreement controls. Cipollino maintains that the second offer letter supersedes the arbitration agreement and that she did not sign an arbitration agreement after signing the second offer letter, and that therefore she is not subject to any valid arbitration agreement. The technical term for what Cipollino describes—that is, the substitution of a new contract for an old one—is a novation. *Intersal, Inc. v. Hamilton*, 834 S.E.2d 404, 434 (2019). Syneos disagrees that the second offer letter constituted a novation. It maintains that the offer letter superseded only representations concerning the conditions of her employment, and not the entirely separate arbitration agreement. To resolve this dispute, the Court must apply North Carolina law on whether a later contract is novation of a prior contract.

"Under North Carolina law, 'whether a new contract between the same parties discharges or supersedes a prior agreement between them depends upon their intentions as ascertained from the instruments.'" *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (quoting *Penney v. Carpenter*, 231 S.E.2d 171, 173 (1977) (cleaned up)). "If the second contract deals with the subject matter of the first so comprehensively as to be complete within itself or if the two contracts are so inconsistent that the two cannot stand together a novation occurs." *Whittaker General Medical Corp. v. Daniel*, 379 S.Ed.2d 824, 827 (1989). Additionally, the presence of a merger clause in a second contract may cause a novation because it creates a rebuttable presumption that the writing represents the parties' final agreement. *Medical Staffing Network, Inc. v. Ridgway*, 670 S.E.2d 321, 326 (2009).

11

This places the parties in an awkward position. The only complete agreement in the record is the arbitration agreement, which is no good for the purpose of determining if the later offer letter was a novation. Cipollino's declaration quotes the merger clause from her second offer letter, but that quotation is insufficient to enable a conclusive determination as to the intent of the parties. Determining whether a later contract is a novation of a prior contract requires the court to "look to the words of the contracts, and the surrounding circumstances, if the words do not make it clear." *Id.*

If the Court finds a disputed issue of fact on the formation of the arbitration agreement, Syneos says that it must proceed to trial of that issue. Fair enough, but that is not the situation before the court. "[T]he question of whether a second contract dealing with the same subject matter rescinds or abrogates a prior contract between the parties depends solely upon the legal effect of the latter instrument, the question is one of law for the court." *Penney*, 231 S.E.2d at 173. It is only when the second agreement does not show that it is a novation on its face and the facts related to the intent of the parties are disputed that it becomes a question of fact. The trial provision of 9 U.S.C. § 4 kicks in when "the record reveals a genuine dispute of material fact regarding the existence of an agreement to arbitrate." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019). In the present case, there is a genuine dispute of law regarding the legal effect of the second offer letter on the agreement to arbitrate. The Court, moreover, cannot resolve that dispute based on the record before it and the court cannot conduct a trial when the dispute of fact has not, and may never, ripen. Accordingly, Defendant's Motion to Compel Arbitration is denied without prejudice.

## CONCLUSION

For these reasons, the Court GRANTS defendant's motion to dismiss the ADA claims of Plaintiff Dailey. The Court GRANTS defendant's motion to dismiss Counts II, V, and VII pertaining to the "Naturally Immune" subclass. The Court DENIES defendant's motion to dismiss Counts III, VI, and VIII.

The Court further GRANTS defendant's motion to strike the "Naturally Immune" subclass from the class pleadings. The Court DENIES defendant's motion to strike the Religious, Disability, and Regarded-As-Disabled Classes.

The Court GRANTS defendant's motion to file a brief in excess of 8,400 words. [DE 37]

The Court DENIES WITHOUT PREJUDICE Defendant's motion to compel arbitration for Plaintiff Jennifer Cipollino.

SO ORDERED, this **27** day of September 2024.

_Terrence Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE